Good morning. My name is Chad Wright. I'm an attorney from Helena, Montana, and I'm representing Mr. Caplette this morning. I think the main question we're talking about here this morning is how should the criminal conduct of a child be used in a later trial when that child has long since become an adult. And what we're talking about here is that when Mr. Caplette was 14 years old, he sexually assaulted a young girl around the same age. And then 10, 11 years later, that juvenile adjudication was used in his trial for sexually assaulting a woman around the same age. Right. And of course because we've got special statutory provisions here, if this were an ordinary crime, this would stay out probably. Right. That's correct. And so this is basically a 403 question. Is that right? Yeah. Boiled down to the essence, it is a 403 question. Yeah. And what may be the consideration or what the controlling factor is, United States versus LeMay in this case. And it seems that LeMay, if you just look at it kind of superficially, would allow juvenile convictions to come in or juvenile adjudications to come in and be used in this sort of circumstance. But what we're arguing here and what we think is the important point is that the understanding or the consideration of LeMay changed since LeMay. And when we're doing the 403 balancing here, which has to be done to maintain the constitutionality of the propensity evidence through Rule 413, the juvenile factor, the juvenile adjudication factor should be one of the main considerations when deciding. But how can we do that and still remain true to our precedent? Well, you can do it and remain true to your precedent, because LeMay really didn't consider the juvenile conviction as a deciding factor in the case. And I think if you look at LeMay, it cited one of the military cases, U.S. v. Wright. And you can see how the military courts, because like crimes on federal Indian reservations are probably one of the few courts that would ever come across this circumstance, they have developed their 403 analysis beyond what LeMay said. And LeMay never limited itself to those five factors that it set forth there. And they did so based on cases in sociological studies that say, wait a minute, juveniles are a whole different animal than adults. But in LeMay, wasn't the 403 consideration in play? I'm sorry? In LeMay, wasn't the 403 consideration in play? Absolutely are. But I think the thrust of LeMay was kind of the full-on challenge to the constitutionality of Rule 414 or that grouping of rules. And it was more of an attack and focus on that we can't let propensity evidence in in any case. And that was the focus of the defendant's argument. And that's why you only have kind of an offhand remark in LeMay about the juvenile status of the defendant in that case. You know, I would feel that you have a much stronger case for keeping this out if it had come in in a different form. That is, it comes in in a very sort of, I don't know what you want to say, almost abstracted and sanitized is probably a better word. I mean, given the nature of that earlier assault, boy, Judge Haddon was actually, and I understand it was by stipulation and so on, but Judge Haddon helped out that this came in in this form. I understand you objected to it coming in at all. But nonetheless, it strikes me that it came in in a pretty innocuous form. And I would agree with you, Your Honor. This is a sanitized version of the overall facts that happened here. But it's the elephant in the room, right? It's the stipulation read by the judge from the bench at the end of the government's case. It can't be ignored. It couldn't be ignored by the jury. And it certainly was the tipping point on this case. Well, maybe. And certainly the government wanted it. The government thought it was important. Right. And the government, I think, in its briefing, has acknowledged that there were a great deal of inconsistencies throughout this case that were crucial to the credibility of both these witnesses. Well, the court concluded that the probity value outweighed the prejudicial effect, and that's why it permitted this evidence, this stipulation. Is that correct? That's correct, Your Honor. Are you saying that under the recent U.S. Supreme Court decisions, we can't consider what the court found, that the probity value outweighed the prejudicial effect? Absolutely not, no. I think there was great probity value, wasn't there? Well, if you look at page 20 of the government's brief, they said that the probity value was scant. I mean, that is on their brief. So I don't know how much probity value there was. That's in hindsight now that it's already in. That's right, Your Honor. But what we're saying is that the probity value, what you're allowing in under these rules, 413, 414, 415, is propensity evidence. I mean, plain and simple. It's that somebody who's done it in the past is going to do it again. In total violation of what we learned from the common law principle. Sure. But, you know, that's allowed now. But what we're saying is that's allowed when adult conduct is compared to adult conduct. And what the probity value, what I'm saying the U.S. Supreme Court said, is probity value when the conduct is a juvenile is not the same probity value when you're an adult. You can't transfer that intent when you're a juvenile to the same intent when you're an adult because it's a whole different nature of how kids react to situations and how kids commit crimes. So you want us to rule as a matter of law that juvenile convictions cannot come in as propensity evidence? No, Your Honor. I want it to be factored in as an intervening factor, as part of the analysis. And Judge Haddon, if you look at ER 7 and 8, said, I understand we're plowing new ground here with this juvenile conviction, but I don't think it's relevant. It's kind of the summary is what he said. You know, I don't think it's the determinative factor on my analysis. What I want to- It shouldn't be the determinative factor. But it should be given some sort of weight, and it wasn't given any weight. And I think you can maintain, back to your earlier question, you can maintain your jurisprudence in LeMay because if they had done the same analysis there, I think possibly that that prior juvenile adjudication in LeMay still would have been admissible because you had multiple victims. You had a defendant who had not established himself in life after the juvenile conviction. There are just a lot of differences from Mr. Caplet's case. And I think that's where the last case I cited in my reply brief, U.S. v. Baird, the military courts have allowed in juvenile adjudications when the factors are right, right? When it's clear that the propensity determination hasn't changed from when that person was a juvenile to when they became an adult. And Baird explains how that happened. He had an older juvenile that was engaged in conduct that continued through to adulthood. Here we don't have that with Mr. Caplet, right? He was 14. So how would that be proven, whether or not the juvenile acts are indicative of the propensity of the adult? Well, I think in this case you have a federal adjudication of the juvenile status, and so there would be a more thorough record of what kind of treatment, how was his conduct under probation. Here the mother of his child testified and said, you know, we've had a relationship for 10 years. And that would show. So that's a mini-trial. I mean, I think what you're advocating is a mini-trial on the propensity evidence when a juvenile is involved. And what case do you have that supports proceeding in that manner? Well, LeMay says in itself that if we're going to allow propensity evidence and say it's constitutional, then we have to do a thorough 403 analysis. Well, but you went a little beyond that when you were talking about you're dictating that witnesses have to testify and you have to look at the conduct on probation. Well, I don't know if witnesses have to testify. The government in this case submitted the prior adjudication, just the facts and the statements from that prior adjudication, just as exhibits to their reasoning for why it should be admitted. I think there should have been some consideration about the individual. And I think if you look at Barry in those cases, that's what they say. Don't just look at the crime. Look at the individual too when you're dealing with an adjudication. And I think if you look at Barry, it has an excellent portion about that. Okay. You've got just less than a minute. Why don't we hear from the government and then you'll get a chance to respond. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Tim Roscoe on behalf of the United States. I'm an assistant U.S. attorney from the District of Montana, and I was trial counsel as well as appellate counsel in this matter. Your Honors, just to kind of dive right in to the argument where Mr. Wright picked up and left off, Judge Rawlinson, for instance, you asked a question about whether or not you can stay true to your precedent if you go in the direction that Mr. Wright is suggesting. And I don't think you can, one of the reasons being that the prior adjudication in Lemay was also juvenile in nature. Now, it wasn't explicitly discussed within the context of that fact alone, but the fact of the matter is it was juvenile evidence in that case as well as in this case. What's your response to opposing counsel's reliance on bearing in those cases regarding the evolving law, the lack of consideration of juveniles and how they have not developed into the people they will be as adults? Well, there are some differences between the analysis that's used in the military courts and the analysis that's suggested by this court in Lemay. But to me, bury and bear in those line of cases really boil down to whether or not the judge, the military judge in those cases, conducted an appropriate 403 balancing test. And the key to bury from the government's perspective is that the judge did not discuss four of those, what would in essence be the equivalent of the Lemay factors articulated in the Wright case within that context. But the judge just simply didn't address four of the Wright factors. Now, imagine in this case the judge had not addressed four of the Lemay factors or three or any for that matter. I think we'd be on a totally different footing than we are today. And that's really the difference between bury where the evidence should not have been allowed in, said the appellate court, and bear where the evidence was allowed in. And what bear says is the judge in bury didn't do a good enough 403 balancing test and the judge here did. And the juvenile nature of the prior conduct was a factor, but it was not the dispositive factor in the bury case. In your view, would a district judge in trying to decide under, say, 413, whether to allow something in when the earlier behavior was that of a juvenile, is it required in performing the 403 balance that the judge explicitly talk about, consider, weigh the factor that this was committed while he was a juvenile? I don't think it is required. I think that really would be. Why not? It sounds to me that that's quite an important factor. The fact that it was juvenile in nature? I don't disagree with that. So why do you say the judge is not required to talk about it? Because I think so long as the judge gives Your Honors an opportunity to look at the entirety of the balancing test, the entirety of his decision to allow the evidence in, whether or not he specifically kind of dissects the nature of the prior evidence, I don't think would be the dispositive factor. Now here, the other thing that we would ask you to do is look beyond just the judge's comments during the course of the trial. This issue was raised five months before trial by the government in its 413 notice. There was a pretrial hearing about it.  The government was asking the court to unseal juvenile records in order to try and figure out how to best put in the evidence, which you acknowledge came in differently than even we imagined it might at the outset. So I guess what I'm saying to answer your question is Judge Haddon didn't, within the context of his ruling at the time of trial, talk in detail about the juvenile nature of the prior. But if you look at the entirety of the record in the case, how long the issue was teed up for the judge? Well, I'm quite willing to do that if I'm trying to figure out what is in Judge Haddon's head and what he considered and so on. So I'm asking that not necessarily as a way to overrule what Judge Haddon did, but as a rule going forward, that if the earlier conviction is a conviction of a juvenile, would you think that the proper rule is that we should make sure that the judge has considered the juvenile nature of that earlier conviction? I don't disagree, Judge Fletcher, that that's an important factor. Yes, I understand that. That wasn't quite my question. Given that it's an important factor, should we require that the district judge, before admitting it, explicitly talk about, acknowledge, and sort of deal with the fact that it's juvenile? I think yes, at the end of the day. But I think that can still be accomplished just by using the factors that are set forth in LeMay. I mean, you could certainly add another factor and say, going forward, it's LeMay plus one, and you have to talk about those sorts of things that you're describing. So your position is implicit in an application of LeMay is the consideration of a juvenile. If the district judge conducts an appropriate 403 balancing test, then I believe it's all wrapped up into one, and that's included in things like how long ago did the other one take place, how similar are they, those sorts of things. And I have no quarrel with your argument that there's enough in front of us to show that Judge Haddon did consider it. I mean, I'm not looking only at what happened at the time of the admission of the evidence. And I certainly wouldn't say or wouldn't submit to you that the fact that it's juvenile shouldn't be considered by the court. And, Judge Rawlton, if I could just kind of take that point and go to a question that you asked about, how would we prove propensity and how would we prove whether or not the juvenile's propensity remains the same as an adult? And I think in this case, in essence, Mr. Caplet proves it for us. His conduct on probation is bad, which we pointed out to the court, his juvenile probation, which gets revoked, which means he's in custody for a four-year period of time, which in essence kind of compresses the timeline, the 10-year timeline between the prior and the offense in this case, because for four of those years he's not free in the community to commit such a crime. And the similarity of the offenses, same gender, similar in age, use of intoxicants, all of those factors that are outlined in the record, I won't get into all of them here. But in essence, you can almost look back and say, how do we know that this is good propensity evidence? Because it's almost an identical crime to the one before. Not identical, but almost identical. So I think that's one way that, again, if you look at the entirety of the LeMay factors and the way the court analyzed them, there was certainly no abuse of discretion here. Counsel, what's your response to opposing counsel's observation that in his view the prosecution said that the propensity evidence was scant? Well, what we say in the brief is that the information we provided to the jury was scant. And that, as you've noted, was encouraged by Judge Haddon, even going all the way back to the pretrial hearing on that issue in June, five months before trial, where he said, you guys might want to think about if this is going to come in at all, and I haven't made that decision, but if it does, how is it going to come in? And so what we ended up doing is biting off on that, negotiating with co-counsel a way to put it in front of the jury in a sanitized form, and that was a calculated decision on the part of the government, in essence, to make sure that we didn't muddy up the situation too much more than it already is any time evidence like that. So you don't retreat from your position that this was important evidence, just the manner in which it was presented to the jury? Correct. And I understand I'm walking a fine line in our brief, in particular when I get into the harmless error aspect of the argument. But in essence, what I'm saying is that the probative nature of it is different from the prejudice that's involved. And so the fact that it scans information impacts the prejudice prong, not the probative prong. Of course, it's incredibly probative evidence if it comes in at all. And it could have been, in fact, much more probative had we outlined the way that that prior offense stacked up with the current offense. What was the probative value? I think, in essence, because of the way that the credibility of the victim had been attacked and because of the way that the other witnesses in the case, there were so many inconsistencies. By saying it was consensual, for example? By saying it was consensual. And because of the fact that it ended up undisputed in the record, that only the defendant and the victim were in the room during the sexual episode, that it became very important, to whatever extent that we could, to corroborate the victim's statements in that case, which also included the undisputed medical evidence that was corroborating of her reports of the injury to her eye and that sort of thing. And I'm happy to take any other questions, Your Honors. Otherwise, I'll cede the remainder of my time. Okay. Thank you very much. Thank you. Mr. Wright, you saved just about a minute. I know a lot of the 403 evidence that counsel brought in was submitted by the government at the lower court, but it wasn't considered on the record by Judge Haddon, and that's the concern I have here, is that even though that may be there and may be in the record, we don't have anything from Judge Haddon that he was thoroughly considering that the juvenile conviction or the status of Mr. Caplet at that time was a consideration when he was doing the balancing test. And if you look at the intervening circumstances, and certainly that's what Barry in those cases says, when your military judges in those cases say, you must take care to do a meaningful analysis of the different phases of the accused development rather than treat those phases as being unaffected by time, experience, and maturity. And that's my concern here, is that I think Judge Haddon didn't do that sort of analysis. And then one last final point, I would like to disagree with the government's contention that no one was in the house when the alleged sexual assault took place. I think he said in the room. Or in the room, yeah, okay. If you look at ER 47, which is one of the government's witnesses, she said she was in the house or near the house during that time. That's not the point. Okay, I just wanted to clarify that point. Okay, thank you. Thank you. Thank both sides for their argument. The case of the United States v. Caplet is now submitted for decision. The next case on the calendar has been submitted on the briefs. That's the United States v. Waterman.
judges: Alarcon, Fletcher W. , Rawlinson